BEVERLY FOLMSBEE *vs.* TECH TOOL GRINDING & SUPPLY,
INC., & another.[1]

Berkshire. January 6, 1994. - March 31, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Civil Rights*, Availability of remedy. *Privacy. Controlled Substances. Contract*, Employment. *Employment*, Termination. *Public Policy.*

A claim brought against a private employer by a former employee alleging a violation of G. L. c. 12, § 11H, by reason of a mandatory drug testing program instituted by the employer, was properly dismissed where the employee did not allege or prove any interference or attempted interference with any right secured by the Constitution or laws either of the United States or of the Commonwealth. [391-392]

In a civil action in which an employee claimed that her employer's mandatory drug testing policy constituted "unreasonable, substantial, or serious" interference with the employee's right to privacy in violation of G. L. c. 214, § 1B, the judge correctly determined that the policy was reasonable in light of the nature of the employer's business, the evidence of employee drug use and the procedural safeguards to guarantee privacy employed by the medical center conducting the tests. [392-394]

An at-will employee discharged for failure to comply with lawful internal policy (mandatory drug testing) of her employer, had no ground for a claim that her discharge was in violation of public policy embodied in the Privacy Act (G. L. c. 214, § 1B), in art. 14 of the Massachusetts Declaration of Rights, and in the Fourth Amendment to the United States Constitution. [394-395]

CIVIL ACTION commenced in the Superior Court Department on May 18, 1990.

A motion for summary judgment on claims alleging violation of the right to privacy and wrongful termination of employment was heard by *William W. Simons*, J. A claim al-

---

[1]Robert Morin.

leging violation of the Massachusetts Civil Rights Act was heard by *John F. Moriarty*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas J. Curley, Jr.*, for the plaintiff.

*Diane M. DeGiacomo* for the defendants.

*Gail S. Strassfeld & Sarah Wunsch*, for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

ABRAMS, J. The plaintiff, Beverly Folmsbee, an employee of the defendant corporation, refused to participate in a mandatory employee drug testing program and left her employment. The plaintiff then filed a complaint against her employer, Tech Tool Grinding & Supply, Inc., alleging: (1) violation of G. L. c. 12, §§ 11H & 11I (1992 ed.), the Massachusetts Civil Rights Act (count I); (2) violation of her right to privacy under G. L. c. 214 (1992 ed.) (count II); (3) wrongful termination in violation of public policy (count III); (4) wrongful termination in violation of the covenant of good faith and fair dealing (count IV); and (5) intentional infliction of emotional distress (count V). Folmsbee agreed to summary judgment in favor of the defendants on counts IV and V. On cross motions for summary judgment, the Superior Court judge allowed summary judgment for the defendants on counts II and III. The remaining count was tried before another judge in the Superior Court, who dismissed count I, and entered judgment for the defendants. Folmsbee appeals from the judgment on counts I through III. We allowed the parties' application for direct appellate review and now affirm.

We summarize the relevant facts. The plaintiff, Beverly Folmsbee, is a former employee of Tech Tool Grinding & Supply, Inc. (Tech Tool). The defendant Tech Tool is a Massachusetts corporation in the business of manufacturing industrial cutting tools. The defendant Robert Morin is vice president and part owner of Tech Tool. Morin oversees the day to day operation of the plant.

Folmsbee began work at Tech Tool as a tool grinder in August, 1988. She worked full time, approximately fifty-five

hours per week, until April 12, 1990. During her employment, she received regular raises and bonuses. She was never reprimanded concerning her job performance. The parties stipulated that Tech Tool never had any probable cause to believe that Folmsbee ingested illegal drugs nor any reasonable suspicion that she did so.

The work at Tech Tool requires the employees to be well trained, constantly alert, and extremely careful. The tools manufactured by the company are razor sharp and must be handled with great care in order to avoid injury to the Tech Tool employees and to persons using them after they have been manufactured and shipped.

Over several years, Morin was concerned about drug use by Tech Tool's employees. Two employees had been arrested on drug charges, and another had been sent to a twenty-one day drug rehabilitation program. In addition, Morin smelled marihuana smoke and found marihuana cigarette butts in the company rest room. On March 12, 1990, Tech Tool posted a handwritten notice to inform the employees that it was initiating a drug testing program to begin on April 12, 1990.

On April 11, 1990, Morin held a meeting to discuss the drug testing procedures with Tech Tool's employees. Morin told the employees that he had selected a local walk-in medical center to perform the testing. All full-time employees, including Morin and the company president, were to be tested.[2] The walk-in medical center adheres to the following procedure. The employee who is being tested disrobes in a private room and dresses in a hospital gown. A medical assistant of the same sex as the employee examines the employee to ensure that no vials of urine have been brought into the room by the employee. The employee then goes alone to the bathroom to produce a urine sample, while the medical assis-

---

[2]Two part-time employees were not required to take the test. One was the mother of the president of Tech Tool, who performed odd jobs. The other was a retiree who worked on his own schedule, making small tools. Morin offered no clear reason why the part-time workers were excluded from the drug testing.

tant waits outside. The specimen is then sealed and hand delivered to the testing laboratory.

Folmsbee saw the notice on March 12, 1990, and attended the April 11 meeting. When she heard about the testing procedures, the fifty-four year old employee became very upset. The following morning, she told Morin that she found the testing procedure degrading and would not take the test. She was particularly distressed by the visual inspection, which she characterized as a "strip search." Morin told Folmsbee that she would have to take the test if she wanted to continue on as an employee. Folmsbee responded, "You've just fired me." Morin denied he was firing her, but continued to insist that she submit to drug testing. Folmsbee left the premises, and did not return to work. She did not take the drug test. She returned to Tech Tool a week later to pick up her tool kit and her check. As of the date of the trial, Folmsbee was working as a part-time housekeeper, about eight hours a week.

1. *Massachusetts Civil Rights Act.*[3] Folmsbee claims that the defendants have violated G. L. c. 12, §11H, by interfering with her right to be free from unreasonable searches and seizures. Folmsbee correctly does not allege a constitutional violation. Because Tech Tool is a private employer, Folmsbee's rights under art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution are not implicated. See *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 717 n.3 (1989).

---

[3]The relevant portions of G. L. c. 12 read as follows: "Section 11H. Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action . . . ."

"Section 11I. Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in [§] 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief."

Folmsbee did not prove any interference or attempted interference with any right secured by the Constitution or laws either of the United States or of the Commonwealth. There was no error.

*2. Right of privacy.*[4] The question presented is whether Tech Tool's drug testing policy constituted an "unreasonable, substantial, or serious" interference in violation of G. L. c. 214, § 1B.[5] The Superior Court judge evaluated the policy under the balancing test set forth in *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 520-521 (1984), and concluded the policy was reasonable. In *Bratt*, we said, "the employer's legitimate interest in determining the employees' effectiveness in their jobs should be balanced against the seriousness of the intrusion on the employees' privacy." *Bratt*, *supra* at 520, citing *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 308 (1982). Previously, in evaluating drug testing by a public employer, we balanced the employee's interest in privacy against the employer's competing interest in determining whether police cadets were using drugs. See *O'Connor* v. *Police Comm'r of Boston*, 408 Mass. 324, 330 (1990).[6]

We have recognized that requiring an employee to submit to urinalysis involves a significant invasion of privacy. See *O'Connor*, *supra* at 328; *Horsemen's Benevolent & Protec-*

---

[4]In prior cases we have reserved the question whether the right of privacy statute reaches attempted interference with a person's privacy. See *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 721 n.5 (1989). See also *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 311 n.1 (1982) (Abrams, J., concurring). Because Folmsbee did not seek an injunction, we again do not reach the issue.

[5]General Laws c. 214, § 1B (1992 ed.), provides in relevant part: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

[6]Courts in other jurisdictions also have employed a balancing test to evaluate whether an employer's drug testing policy unreasonably intrudes on the privacy of employees. See *Borse* v. *Piece Goods Shop, Inc.*, 963 F.2d 611 (3d Cir. 1992); *Luedtke* v. *Nabors Alaska Drilling, Inc.*, 768 P.2d 1123 (Alaska 1989); *Hennessey* v. *Coastal Eagle Point Oil Co.*, 129 N.J. 81 (1992); *Twigg* v. *Hercules Corp.*, 185 W.Va. 155 (1990).

*tive Ass'n, Inc.* v. *State Racing Comm'n*, 403 Mass. 692, 704 (1989). The act of urination is inherently private. Moreover, Tech Tool's medical tester required the employees of Tech Tool to submit to a visual inspection by either a doctor or medical assistant, in order to ensure that the employee had not concealed any vials of urine.

On the other side of the balance is Tech Tool's legitimate business interest. The nature of Tech Tool's business requires extreme alertness and precision. Even a slight error could result in serious harm to both employees and customers. Morin had a strong basis for suspecting that Tech Tool employees were using drugs.[7] Thus, he was concerned for the safety of both Tech Tool's employees and its customers.

Tech Tool provided thirty days' notice prior to initiating any testing. All full-time employees, including the two owners, were required to take the test. Morin promised that anyone who tested positive would not be fired, but would be retested in thirty days and given an opportunity to undergo drug counselling at company expense.

Folmsbee did not object to drug testing per se. The parties stipulated that Tech Tool never had any probable cause to believe that Folmsbee ingested illegal drugs nor reasonable suspicion that she did so. Folmsbee objected to the visual inspection procedure employed by the medical center.[8]

The center is an established medical facility with experience in drug testing. The person being tested goes alone into the examining room to disrobe in privacy. A doctor or medical assistant of the same sex as that person performs a brief visual inspection. The judge found that a visual inspection was necessary because vials of urine intended for the purpose of frustrating drug testing are commercially available. The person then goes alone to produce the urine specimen, while

---

[7]As a private employer, Tech Tool is not subject to the more stringent requirements of probable cause that govern public employers. See *Horsemen's Benevolent & Protective Ass'n, Inc.*, *supra* at 706.

[8]In her discussion with Morin on April 12, 1990, Folmsbee did not suggest a less intrusive method of guaranteeing the integrity of the urine sample or the alternative of a blood test for drugs.

the doctor or medical assistant waits outside. The Superior Court judge ruled that the procedures were not unnecessarily intrusive.[9] We agree.

In light of the nature of Tech Tool's business, the evidence of employee drug use, and the procedural safeguards to guarantee privacy employed by the medical center, the judge correctly determined that the drug testing policy was reasonable. Balancing the competing interests, we conclude that Tech Tool's drug testing policy did not violate G. L. c. 214, § 1B.

3. *Wrongful termination in violation of public policy.* The general rule is that an employment-at-will contract can be terminated at any time for any reason or for no reason at all. See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 668 n.6 (1981). As an exception to the general rule, we have permitted employees in certain circumstances to seek redress for terminations in violation of public policy. *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State School*, 404 Mass. 145, 149 (1989).

Folmsbee asserts that her discharge from Tech Tool contravenes the public policy embodied in the Privacy Act, in art. 14 of the Massachusetts Declaration of Rights, and in the Fourth Amendment to the United States Constitution. The Superior Court judge concluded that "the facts of this case [do not] fall into any of the previously delineated categories which are exceptions to the 'at will' rule." We agree.

Folmsbee was not discharged "for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do what the law forbids (e.g., committing perjury)." *Smith-Pfeffer, supra* at 149-150, and cases cited. She was discharged[10] for failure to comply with a lawful internal company policy.

---

[9]Folmsbee did not raise or argue the question whether Tech Tool's policy provides adequate safeguards against dissemination of private information regarding its employees. Therefore, that issue is not before us.

[10]Morin denies that he fired Folmsbee. We assume, without deciding, that Folmsbee was discharged.

Folmsbee relies on *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300 (1982), in which we said that an unreasonable, substantial, or serious interference with an employee's privacy could contravene public policy and warrant the imposition of liability on the employer for the discharge. *Cort*, *supra* at 307. In *Cort*, employees refused to answer questions appearing on an employer questionnaire because they found them to be highly personal and offensive. We concluded in *Cort* that employers do not have unlimited discretion to require disclosures of their employees' personal lives.

However, in this case, as in *Cort*, the employer's interference with the employees' privacy was reasonable. See *id.* at 310. As we stated above, Tech Tool did not violate G. L. c. 214, § 1B, by unreasonably interfering with Folmsbee's privacy. The judge properly allowed the defendants' motion for summary judgment on Folmsbee's claim for wrongful discharge in violation of public policy. There was no error in entering judgment for the defendants on counts I, II, and III of the plaintiff's complaint.

*Judgment affirmed.*