JAMES A. WEBSTER & another[1] *vs.* MOTOROLA, INC., & others.[2]

Suffolk. April 5, 1994. - July 21, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Civil Rights*, Availability of remedy, Coercion. *Privacy. Controlled Substances. Contract*, Employment. *Employment*, Termination, Urine testing.

Summary judgment was correctly entered for the defendants on claims brought by two at-will employees against their employers alleging violation of the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, where the conduct of the employers in instituting a mandatory universal drug testing program involving urinalysis, did not constitute a threat, intimidation or coercion, where the employees had no right to their at-will positions, and where the drug testing program was universal and not directed toward the plaintiffs. [429-430]

In a civil action in which two employees claimed that their employers' institution of a mandatory, universal drug testing program violated their right to privacy under G. L. c. 214, § 1B, the judge correctly concluded that, in light of the nature of the defendants' businesses, the plaintiffs' duties and responsibilities, and the program's testing procedures which guarantee privacy and ensure accuracy as much as possible, the drug testing policy was reasonable as to one employee but not as to the other. [430-434]

CIVIL ACTION commenced in the Superior Court Department on September 26, 1990.

A motion for summary judgment was heard by *Patti B. Saris*, J., and claims by the plaintiffs under G. L. c. 214, § 1B, the Massachusetts Privacy Act, were heard by her.

---

[1]Michael P. Joyce.

[2]Motorola Communications and Electronics, Inc., and Codex Corporation.

The Supreme Judicial Court granted a request for direct appellate review.

*David A. Hoffman* (*Audrey K. Wang & Sarah Wunsch* with him) for the plaintiffs.

*Paul E. Nemser* (*David S. Mackey* with him) for the defendants.

*Warren M. Davison, Mark A. de Bernardo & John W. Kyle*, of the District of Columbia, for Institute for a Drug-Free Workplace, amicus curiae, submitted a brief.

NOLAN, J. This case concerns the propriety of a drug testing program instituted by the defendants Motorola Communications and Electronics, Inc. (Motorola Communications) and Codex Corporation (Codex), which are subsidiaries of the defendant Motorola, Inc. (Motorola). The plaintiffs, James A. Webster and Michael P. Joyce, appeal from the summary judgment against them on their claims brought under G. L. c. 12, § 11I (1992 ed.), the Massachusetts Civil Rights Act (MCRA), and Webster appeals the ruling and decision of the trial judge who was also the motion judge in favor of the defendants on his claim under G. L. c. 214, § 1B (1992 ed.), the Massachusetts Privacy Act. The defendants cross appeal the trial judge's decision in favor of Joyce on his claim under c. 214, § 1B. We granted the defendants' application for direct appellate review. We affirm. The facts follow.

Motorola is an international manufacturer of various electronic equipment and systems. On January 1, 1991, Motorola instituted a universal drug testing program (program) at all of its facilities, including those operated as Motorola Communications and Codex. Before 1991, Motorola's employees were subjected to a urine test prior to their employment and otherwise only "for cause." Under the program, employees are randomly selected by computer for testing. Name selection runs on a cycle, such that each employee is selected at least once in a three-year period.

When selected for testing under the program, employees are notified and instructed to report to a designated collection site located at or in the area of their Motorola facility.

On arriving at the testing location, an employee is asked to sign a form authorizing the testing. The employee is given the opportunity to disclose to the technicians any medications he may recently have taken. The employee is then given a cup, and is asked to provide a urine specimen. The employee is directed to a private room in which to produce the specimen. A technician stands immediately outside of the room to listen while the employee urinates. Once provided with the specimen, the technician, while in the presence of the employee, examines the specimen for unusual characteristics and records its temperature. The employee is then allowed to leave.

Collected urine specimens are tested by an independent chemical laboratory for the presence of five classes of drugs: marihuana, cocaine, opiates, phencyclidine (PCP), and amphetamines. If a sample tests positive for any of these drugs, it is further tested for barbiturates, benzodiazepines, methadone, and methaqualone. Each positive result is reported to a medical review officer (MRO), who is not an employee of Motorola, for verification. An MRO meets with each employee who has tested positive, and asks them about medications and dietary information in an effort to identify any substances which may have affected the testing. The MRO then reviews the test results and the information obtained during the employee interview to verify the positive test result. The MRO is instructed by Motorola to rule on the side of the employee if the MRO has "discussed or seen evidence from the employee that would substantiate a negative rather than a positive test."

A verified positive test result is reported to a designated staff member in the health services department at Motorola's corporate headquarters. The result is then disclosed to a designated personnel professional for the employee's division, who in turn communicates with the employee and a Motorola employee assistance program (EAP) professional. The employee's supervisors are notified only if necessary to restrict the employee's duties or to provide accommodations for the employee. The EAP professional meets with the em-

ployee to assess the nature of the employee's drug use. The employee is then referred to an outside provider, who diagnoses the employee and recommends a rehabilitation plan. Rehabilitation plans may include education, out-patient treatment, or in-patient treatment. Employees who refuse to undergo rehabilitation or who otherwise refuse to comply with Motorola's drug testing program are terminated.

James A. Webster was employed by Motorola Communications in Waltham as an account executive. He was an "at-will" employee; his employment relationship with Motorola Communications was expressly terminable "with or without notice at any time, and for any reason." At the inception of his employment in 1988, Webster signed a drug testing consent form, which at that time concerned only preemployment testing and "for-cause" testing. As part of his employment responsibilities, Webster sells communications equipment to various State and local government agencies. His position requires that he drive a company-owned vehicle approximately 20,000 to 25,000 miles a year. On March 2, 1992, Webster was informed that he had been selected for testing. He was tested on March 3, after signing the testing authorization form under protest. He chose to be tested rather than face termination under the program.

Michael P. Joyce was employed at Codex as a principal technical editor. Like Webster, his employment relationship with his employer was "at will." Joyce primarily edited user manuals for data communications equipment. He also designed and developed product documentation and tested documentation against products. Numerous products for which Joyce edited documentation have been sold to the United States Department of Defense (Defense Department) and the Federal Aviation Administration (FAA). On notice of Motorola's program, Joyce objected to Codex management. He was not tested under the program.

This action commenced in the Superior Court on September 26, 1990. The plaintiffs' complaint includes claims under G. L. c. 12, § 11I, and G. L. c. 214, § 1B, and claims for

breach of contract and wrongful termination.[3] The plaintiffs seek declaratory and injunctive relief, as well as costs and attorney's fees. The plaintiffs filed a motion for a preliminary injunction, which was denied. After a period of discovery, the defendants moved for summary judgment. The motion judge entered judgment in favor of the defendants on all claims except those brought under G. L. c. 214, § 1B. The plaintiffs filed a motion for reconsideration as to their claims under the MCRA, which was denied.

Trial commenced on June 12, 1992, and was conducted before a judge sitting without a jury. Trial lasted three days. On November 10, 1992, the trial judge issued her findings of fact, rulings of law, and order of judgment. She ruled that Motorola's program violated the privacy act as to Joyce but not as to Webster, and she ordered that the defendants be enjoined from testing Joyce under the program. We address the issues.

1. *Massachusetts Civil Rights Act.* The plaintiffs assert that the defendants violated G. L. c. 12, § 11I, by interfering or attempting to interfere with their right to privacy.[4] They argue that the defendants' conduct constitutes actiona-

---

[3]Since the commencement of this action, both plaintiffs have left the employ of the defendants. This does not affect our review of the issues here presented; the plaintiffs still have standing to pursue their civil rights claims, and as the Superior Court judge declared that the defendants' program violated G. L. c. 214, we review that issue as well.

[4]General Laws c. 12, § 11I (1992 ed.), reads in part as follows: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in [§] 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief . . . ."

General Laws c. 12, § 11H (1992 ed.), to which § 11I refers, reads in part as follows: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action . . . ."

ble "threats, intimidation or coercion." The motion judge ruled that the alleged conduct of the defendants, as a matter of law, did not constitute a threat, intimidation, or coercion. We agree.

Relief under the Massachusetts Civil Rights Act may be granted where the threat, intimidation, or coercion involves "any interference or attempted interference with any right secured by the Constitution or laws either of the United States or of the Commonwealth." *Folmsbee* v. *Tech Tool Grinding & Supply, Inc.*, 417 Mass. 388, 392 (1994). In the present case, the defendants conditioned the plaintiffs' continued employment on their submission to the program. The plaintiffs were employed "at will." Thus, the defendants allegedly attempted to interfere with the plaintiffs' rights by threatening the loss of their "at-will" positions. This is not actionable conduct. No physical confrontation is alleged, and because the plaintiffs were employed "at will," they had no contract right to their positions.

Furthermore, "meritorious claims for which this court has granted relief under the Massachusetts Civil Rights Act . . . [generally] involve[] measures directed toward a particular individual or class of persons." *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 718-719 (1989). In this case, the plaintiffs' employment was conditional on their participation in the defendants' *universal* drug testing program. The program involves "indiscriminate, impartially administered testing, and is not comparable with the direct assault found in cases where we have granted relief under the Massachusetts Civil Rights Act." *Id.* at 719.

Summary judgment was properly entered for the defendants.

2. *Right to privacy.* The plaintiffs assert that the defendants' universal drug testing program violates the plaintiffs' statutory right to privacy, as provided in G. L. c. 214, § 1B.[5]

---

[5]General Laws c. 214, § 1B (1992 ed.), provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

The trial judge concluded that the defendants' program violated the rights of Joyce but did not violate the rights of Webster. Webster argues error in the trial judge's decision, claiming that the defendants' interest in testing him is outweighed by his privacy interests. The defendants argue that the trial judge erred in her determination as to Joyce, claiming that their legitimate business interests outweigh Joyce's privacy interest. There is no error.

General Laws c. 214, § 1B, protects an individual's privacy from "unreasonable, substantial or serious" interference. To determine whether an employer's drug testing policy violates its employees' rights under § 1B, we employ a balancing test: "[W]e balance[] the employee[s'] interest in privacy against the employer's competing interest in determining whether [its employees are] using drugs." *Folmsbee* v. *Tech Tool Grinding & Supply, Inc.*, *supra* at 392, and cases cited. We note, "As . . . private employer[s], [the defendants] [are] not subject to the more stringent requirements of probable cause that govern public employers." *Id.* at 393 n.7, citing *Horsemen's Benevolent & Protective Ass'n, Inc.* v. *State Racing Comm'n*, 403 Mass. 692, 706 (1989). We examine the interests of the parties.

"We have recognized that requiring an employee to submit to urinalysis involves. a significant invasion of privacy." *Folmsbee*, *supra* at 392, citing *O'Connor* v. *Police Comm'r of Boston*, 408 Mass. 324, 328 (1990), and *Horsemen's Benevolent & Protective Ass'n, Inc.* v. *State Racing Comm'n*, *supra* at 704. "The act of urination is inherently private," *Folmsbee*, *supra* at 393, and beyond the act itself, individuals have a privacy interest in what may be detected through urine testing. *Horsemen's Benevolent & Protective Ass'n, Inc.*, *supra* at 700 ("an individual has reasonable expectations of privacy regarding the information which can be extracted from a urine specimen"). Additionally, to the extent that it may be requested to rebut an initial positive test result, information concerning an employee's medical conditions is also within the realm of one's privacy interest. See *id.*

"On the other side of the balance is [the defendants'] legitimate business interest." *Folmsbee, supra* at 393. We have stated that "an employer may have a substantial and valid interest in aspects of an employee's health that could affect the employee's ability effectively to perform job duties." *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 524 (1984). The nature of the employer's business and the nature of the employee's duties are relevant factors in determining the gravity of the employer's interest. See *Folmsbee, supra.*

Motorola designs, manufactures, and sells various electronic equipment in international markets. Its products include two-way radios, pagers, cellular telephones and systems, semiconductors, defense and aerospace electronics, automotive and industrial electronics, computers, data communications equipment, and information processing equipment. These are used in consumer products, such as air bags, ignition systems controls, braking systems, and steering mechanisms, and are also sold to the government for various applications, including radar systems, ground-to-air communications, and two-way communication systems designed for State and local police and fire departments. Motorola Communications's product line includes two-way communications systems, and Codex's line includes data communications equipment and defense and aerospace electronics which are sold to various corporations in the retail, banking, and airline industries, as well as to the FAA, the Defense Department, and the White House.

Webster was employed by Motorola Communications as an account executive. His responsibilities included sales of communications equipment to various local and State agencies. His position required him to drive a company-owned vehicle approximately 20,000 to 25,000 miles a year. Joyce was employed by Codex as a technical editor. His duties included designing and editing technical documentation for various data communications. Some of the equipment for which he edited documentation was sold to the Defense Department and the FAA. With respect to Webster, Motorola Communi-

cations's and Motorola's legitimate business interests justify their random drug testing program. The defendants, as do all businesses, have a general interest in protecting the safety of their employees and in providing them a drug-free environment in which to work. This interest alone, however, is not sufficient. Motorola Communications, and Motorola had the added interest in ensuring that Webster not operate their motor vehicle while intoxicated by drugs; this interest included protecting Webster's safety and the safety of others, preventing corporate liability, and protecting corporate property. In the circumstances, the defendants' legitimate business interests are sufficient to outweigh Webster's privacy interests.

With respect to Joyce, the interests of his employer, Codex, and Motorola are not sufficient to outweigh his privacy interests. Although his job duties are such that errors could possibly result in harm to human health and safety or to national security, the trial judge rightly determined that "the nexus between his job duties and the harms feared is attenuated." Joyce primarily is an editor of technical texts; he is not a principal writer. His work is checked by others before release. In fact, the judge found that Motorola conceded that "it is unable to predict whether any of the manuals or updates which Mr. Joyce is editing . . . are likely to affect national security or human health and safety."

Joyce does not have a security clearance, nor does he work directly on matters of national security. The judge concluded that, "Motorola . . . has not demonstrated that the proprietary information in question is sufficiently sensitive to justify drug testing. Motorola merely asserts that Mr. Joyce has access to proprietary information and does not identify the nature of the information protected nor the risk of harm sought to be prevented." The judge balanced that fact against Joyce's privacy rights. See *Folmsbee, supra* at 392. Based on the evidence, the judge concluded that "the balance tips in favor of the employee." The judge did not foreclose the possibility that Joyce's job duties may change. The judge noted

that, if Joyce's duties "entail an immediate risk to health and safety," the balance would shift in favor of Motorola.

The judge recognized that the balancing of interests involves a factual inquiry. She considered the nature of the employee's duties, as well as the safety risk to the employer, the employee, and the public. See *Folmsbee, supra* at 393. The judge's factual findings are supported by the record, and her conclusions follow the law as stated by this court and the Supreme Court of the United States. See *National Treasury Employees Union* v. *Von Raab*, 489 U.S. 656, 678 (1989); *Folmsbee, supra* at 392-393; *Bratt, supra* at 518-519. There is no error in her conclusion that the legitimate interests of Codex and Motorola are not sufficient to outweigh the privacy interests of Joyce.

Motorola's testing program is not otherwise unreasonably intrusive. The individual being tested is not observed while urinating, nor is he or she visually inspected during the procedure. Cf. *Folmsbee, supra* at 393. The only information ultimately reported to Motorola is whether traces are discovered of any of the five drugs for which the sample was tested, and before being reported, test results are first verified by an independent MRO. The judge found that the laboratory which tests the specimens utilizes "a highly accurate, state-of-the-art technique." The judge further found, "Though not subject by law to [them], Motorola's testing procedures adhere to or give employees more protection and privacy than the [United States] Department of Health and Human Services Mandatory Guidelines for Federal Workplace Drug Testing Programs."

We conclude that, in light of the nature of the defendants' businesses, the plaintiffs' duties and responsibilities, and the program's testing procedures which guarantee privacy and ensure accuracy as much as possible, the defendants' drug testing policy was reasonable as to Webster but not as to Joyce.

3. *Conclusion.* We therefore affirm summary judgment in favor of the defendants on the plaintiffs' civil rights claims,

and we affirm the judge's decision on the plaintiffs' claims brought under G. L. c. 214.

*So ordered.*