IN THE MATTER OF A JOHN DOE GRAND JURY
INVESTIGATION.

Suffolk. March 2, 1993. - July 8, 1993.

Present: LIACOS. C.J., NOLAN. LYNCH, O'CONNOR, & GREANEY. JJ

*Grand Jury. Practice, Criminal,* Grand jury proceedings. *Privacy. Public
Record.*

A videotape of a lineup requested by and recorded for a grand jury investi-
gating a shooting incident was not subject to public disclosure after the
investigation and prosecutions had concluded. [729-731]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on January 6, 1993.

The case was reported by *O'Connor*, J.

*R. J. Cinquegrana*, Assistant District Attorney (*Marina
Medvedev*, Assistant District Attorney, with him) for the
District Attorney for the Suffolk District.

*LaDonna J. Hatton*, Assistant Attorney General, for the
Attorney General & others, amici curiae.

*Irwin B. Grant Schwartz* for WBZ-TV4.

O'CONNOR, J. In this action under G. L. c. 211, § 3, the
district attorney for the Suffolk District (district attorney)
seeks relief from a Superior Court judge's order that "the
Commonwealth through the Suffolk County District Attor-
ney's Office allow public access to any and all videotapes of
the December 28, 1989 line-up in the Stuart murder investi-
gation. Such tapes shall include video and sound records of
the members of the line-up and video and sound records
made of anyone viewing the line-up, including the late
Charles Stuart."[1] The lineup referred to in the order oc-

[1]The Attorney General and the district attorneys of the Berkshire, Bris-
tol, Cape and Islands, Central, Eastern, Hampden, Norfolk, Northwestern,

curred at the request of a grand jury investigating a shooting incident that had occurred in October, 1989, and had left Charles Stuart wounded and his wife, Carol DiMaiti Stuart, and her unborn child dead. At the lineup, Charles Stuart, who died soon after it was conducted, apparently as a result of suicide, purportedly identified the assailant as William Bennett. Bennett had been a prime suspect after initial police investigation. Further investigation ultimately revealed, however, that Charles Stuart, not Bennett, had shot himself and his wife. The incident and resulting investigation generated considerable public interest.

On November 19, 1990, several months after Charles Stuart's death, the grand jury concluded their investigation and returned indictments against Matthew Stuart, who was Charles Stuart's brother, and John McMahon for crimes related to the shootings. Two years later, in November, 1992, Matthew Stuart and John McMahon pleaded guilty to several charges, thereby concluding the prosecutions arising out of the shooting incident. The order which is the subject of this proceeding results from a motion filed by WBZ-TV4 in December, 1992.

The question which confronts us, whether the public should have access to the videotape, was raised by WBZ-TV4 previously, while the criminal matters were pending and, in that context, was considered by this court. *WBZ-TV4* v. *District Attorney for the Suffolk Dist.*, 408 Mass. 595 (1990). In that decision, we affirmed an order of a single justice of this court denying an injunction seeking access to the videotape. We explained that "at [that] time the secrecy of the grand jury and the privacy of Bennett should be protected by not requiring the disclosure of the record (the videotape) of the line-up delivered to the grand jury." *Id.* at 602.

---

and Plymouth districts filed a motion in this court for leave to file an amici brief. WBZ-TV4, the appellee, opposed the motion. The motion is allowed and the court acknowledges the brief filed by the Attorney General and the nine district attorneys.

In issuing the more recent order granting access, which the district attorney now asks us to set aside, the judge noted several changed circumstances since our decision in *WBZ-TV4* v. *District Attorney for the Suffolk Dist., supra*: (1) the grand jury had concluded their investigation; (2) the criminal prosecutions had been concluded; (3) many of the details of the lineup had been publicly disclosed in an investigative report, and (4) Bennett, McMahon, and Matthew Stuart had consented to disclosure of the videotape. The judge reasoned that, due to those changed circumstances, "the policy reasons underlying the grand jury secrecy rule no longer apply to the videotape(s) of the line-up," and therefore "public disclosure of the line-up record is in order." The district attorney then filed a petition pursuant to G. L. c. 211, § 3, requesting reversal of the judge's order. A single justice reserved and reported the case to the full court. We conclude that the order was erroneous, and we direct that a judgment be entered vacating it.

The secrecy requirement relative to grand jury proceedings is "deeply rooted in the common law of the Commonwealth." *WBZ-TV4* v. *District Attorney for the Suffolk Dist., supra* at 599. Several interests are served by maintaining secrecy, such as protection of the grand jury from outside influence, including influence by the news media; protection of individuals from notoriety and disgrace; encouragement of free disclosure of information to the grand jury; protection of witnesses from intimidation; and enhancement of free grand jury deliberations. *Id.* at 600. The promotion of many of these interests, especially the encouragement of witnesses to come forward and testify freely, requires courts, including this court, to "consider not only the immediate effects [of disclosure] upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. . . . Thus, the

interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil Co. of Cal.* v. *Petrol Stops Northwest,* 441 U.S. 211, 222 (1979).

The judge in the Superior Court reasoned as follows: "[S]imply because a criminal investigation has concluded, [it does not follow] that grand jury matters are automatically subject to disclosure. Indeed . . . grand jury matters are ordinarily not subject to disclosure. . . . However the post-investigation policy considerations in favor of secrecy are not as compelling when applied to a line-up as opposed to proceedings before the grand jury itself. Disclosure of the line-up does not lift or rend the veil of secrecy shrouding witness testimony before the grand jury or that body's deliberations. Using the criteria set forth in *Commonwealth* v. *Harris,* 231 Mass. 584, 586 (1919) post-investigation disclosure of the line-up, as opposed to witness testimony and deliberations, would not subject future grand juries to outside influences capable of distorting the grand jury function; nor would disclosure of a line-up, as opposed to witness testimony before the grand jury, distort or impair the grand jury function. A grand jury requested line-up is a discrete act, not implicating any other grand jury procedure. Because it occurs outside the presence of the grand jurors and is conducted by police officials working with lay witnesses, there is little or no practical difference between a line-up conducted at the request of the grand jury and a line-up initiated by the police without grand jury involvement."

We do not agree with the judge that there is little difference between a lineup conducted at the request of the grand jury and a lineup initiated by the police without grand jury involvement. In our view, there is little difference between a lineup conducted in the presence of the grand jury and a lineup conducted at a police station at the request of the grand jury and videotaped for the grand jurors' exclusive viewing. Although the circumstances in *WBZ-TV4* v. *District Attorney for the Suffolk Dist., supra,* were somewhat different, in that the investigation had not concluded, our reason-

ing in that case was essentially the same as it is today. In that case, we said, "The videotape in this case did not exist until after the grand jury convened, but was created at their request, was viewed exclusively by them, and is still being considered by them. As such, the videotape has the characteristics of material especially prepared for the grand jury which, when received by them, should ordinarily be protected by the rule of grand jury secrecy." *Id.* at 601-602.

We are not persuaded that disclosure of the videotape is indicated by the fact that Bennett, McMahon, and Matthew Stuart do not object to it. First, those individuals do not speak for the several other persons who participated in the lineup and have privacy interests to be considered, nor do they speak for the grand jurors who had good reason to believe that the proceedings would be kept secret. Furthermore, if we were to approve an order of disclosure whenever those persons who may be directly affected by it give their consent, it is reasonable to think that potential grand jury witnesses, recognizing that at a future time pressure may be exerted on them to consent to the publication of their testimony, will either refuse to come forward or will tailor their testimony in view of that possibility. Similarly, if we were to approve an order of disclosure where consent is given, it is reasonable to think that, in some instances, at least, freedom of deliberations would be restricted by the grand jurors' awareness of the risk that, upon the conclusion of their deliberations, they will be subject to pressure to consent to disclosure. We conclude, therefore, that a rule that would warrant an order of disclosure of grand jury proceedings where consent has been given, even by all those directly and immediately affected, would be unwise because it would disserve the important public interests of encouraging free disclosure of information to the grand jury and free deliberations.

The case is remanded to the Supreme Judicial Court for the county of Suffolk, where a judgment is to be entered vacating the order of the Superior Court.

*So ordered.*