Christopher FRENCH, Plaintiff,

v.

UNITED PARCEL SERVICE, INC., Defendant.

No. Civ.A. 97–10777–GAO.

United States District Court, D. Massachusetts.

April 7, 1998.

Litigant's Attorney, Alan S. Fanger, Needham, MA, for Litigant Christopher French, plaintiff.

Sharon R. Burger, Christa von der Luft, Nutter, McClennen & Fish, Boston, MA, for United Parcel Service, defendant.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

In this action, the defendant United Parcel Service, Inc. ("UPS") has moved to dismiss the plaintiff Christopher French's complaint for failure to state a claim upon which relief can be granted. For the following reasons, UPS' motion to dismiss for failure to state a claim is granted.

The complaint alleges the following facts. French began employment with UPS in March 1984 as a track loader. During the next fourteen years he rose through the ranks to the position of Business Manager of the UPS facility in Chelmsford, Massachusetts. On August 17, 1996, after completing his shift, French invited three fellow UPS employees from the Chelmsford facility to attend a beer festival in Derry, New Hampshire. One of the invited employees, Tom Clark, was French's superior. The two other employees, Bari Boyce and Daniel DeButts were supervisory employees but lower in rank than French. Clark, DeButts and Boyce spent several hours at French's home where DeButts consumed alcoholic beverages and became intoxicated, "emotionally volatile and uncontrollable." Compl. ¶ 5. French let DeButts "dry out" in his garage. Id. While DeButts was alone in the garage, he lost control and "went into a violent rage, causing injury to himself." Id. ¶ 6. French, together with Clark and Boyce, found DeButts lying in the garage bleeding. An ambulance was called and DeButts was taken to a local hospital where he was treated and released after twenty-four hours.

Following the incident, French's supervisor, Clark, requested that French report it to his superiors at the Chelmsford facility. "Believing that the incident was none of UPS' business," French initially decided not to do so. Id. ¶ 8. Clark continued to press French, however, and on August 19, 1996, French informed four of the supervisors below him of the details of the incident. Two days later, French related the details of the incident to the division manager of operations, who was French's superior. French was put on leave pending an investigation of the incident. As a result of this suspension, French began treatment for depression. During the next several months while French was still on leave, UPS personnel demanded that French meet with them to discuss the incident. "During these meetings the Plaintiff was peppered with questions, brow-beaten about the incident, and otherwise shamed and made to feel as if his life outside of work was important to his success and future with UPS." Id. ¶ 11. In addition, "UPS repeatedly contacted the mental health professionals who were treating French for depression to determine his condition and prognosis for recovery." Id. ¶ 12. On January 29, 1997, French was demoted to the position of supervisor. He returned to work for about five weeks, but then resigned because of the humiliation he felt in having to perform tasks which he had not been required to perform since the late 1980s. French subsequently brought this complaint, alleging four causes of action against UPS: invasion of privacy; reckless infliction of emotional distress; violation of the Massachusetts Civil Rights Act; and wrongful constructive discharge.

UPS has moved to dismiss all four counts of French's complaint. Dismissal under Fed.R. 12(b)(6) for failure to state a claim upon which relief may be granted is proper when it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997). French is required to set forth in his complaint direct or inferential factual allegations regarding each material element necessary to sustain recovery under some legal theory. *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

### Count 1: Invasion of Privacy

The Massachusetts' right of privacy statute, Mass.Gen.L. ch. 214, § 1B, provides that "A person shall have a right against unreasonable, substantial or serious interference

with his privacy." To constitute an invasion of privacy, the invasion must be both unreasonable *and* serious or substantial. *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 567 N.E.2d 912, 914 (1991). French alleges that UPS violated his right to privacy by: (a) insisting that he disclose details concerning an incident that occurred during off-work hours at his home; (b) repeatedly contacting his mental health providers without his consent; and (c) penalizing him, in the form of involuntary leave and demotion, for the incident. Compl. ¶ 17.

### (a) Requiring Disclosure about the Incident

■ For purposes of the Massachusetts Privacy Act, "private" facts are not necessarily simply those that are "not public," that is, not generally or widely known. Rather, § 1B proscribes the "required disclosure of facts about an individual that are of a *highly personal or intimate* nature." *Bratt v. International Business Machs. Corp.*, 392 Mass. 508, 467 N.E.2d 126, 133–34 (1984) (emphasis added). The fact that a fellow employee drank too much at French's house is not a fact about French that is "highly personal or intimate."[1] More importantly, the facts of what happened in the incident were not information that was "private" to French. Three other UPS employees took part in and observed the events, one of whom, Clark, was French's superior in the company hierarchy. Any of these persons was free to describe the incident; none had any apparent relationship with French that imposed some obligation of confidentiality. Indeed, as French's superior, Clark may even have owed UPS a duty to report, *sua sponte*, what he had observed. Be that as it may, it is surely unlikely that the Massachusetts courts would interpret § 1B to give French a right to prohibit Clark (or any one else who was present, including DeButts) from voluntarily disclosing what he had personally observed or done in connection with the incident. In short, the incident was simply not a "private" affair of French alone.

■ In addition, there are circumstances in which it is legitimate for an employer to know some "personal" information about its employees, so long as the information reasonably bears upon the employees' fitness for, or discharge of, their employment responsibilities. *Cort v. Bristol–Myers Co.*, 385 Mass. 300, 431 N.E.2d 908, 913–14 (1982). In the employment context "the employer's legitimate interest in determining the employees' effectiveness in their jobs [is] balanced against the seriousness of the intrusion on the employees' privacy." *Bratt*, 467 N.E.2d at 135.[2] UPS has articulated legitimate business reasons for seeking information about the DeButts incident, including concerns about the soundness of judgment exercised by its supervisory employees in regard to alcohol abuse generally as well as in a particular setting where all participants were UPS employees. In light of these legitimate concerns, the company's questioning him about facts known to several other employees amounted, at most, to a *de minimis* intrusion into French's privacy, not actionable under the statute. *See Cort*, 431 N.E.2d at 914.

### (b) Attempted Contact of Mental Health Care Providers

■ French also alleges that UPS "repeatedly contacted the mental health professionals who were treating the Plaintiff to determine his condition and prognosis for recovery. UPS made these contacts without the prior consent of the Plaintiff." Compl.

---

1. It is not necessary to decide whether it would be "highly personal or intimate" information about DeButts, rather than French.

2. The balancing of interests involves a factual inquiry. *Webster v. Motorola, Inc.*, 418 Mass. 425, 637 N.E.2d 203, 208 (1994). However, where the complaint does not allege, directly or inferentially, facts which could support a scenario in which a *de minimus* intrusion into an employee's privacy could outweigh an employer's articulated legitimate business justification, then the case is suitable for dismissal. *See Berner v. Delahanty*, 129 F.3d at 26 (noting, in a different context, that if a "justification is apparent and is plausible on its face, a complainant who hopes to survive a motion to dismiss must do more than suggest conclusorily that the [defendant] has an improper or insufficient motivation").

¶ 12. The complaint does not allege that any private information was actually obtained by UPS. "Whatever unlawful invasion of privacy ... might have arisen if the defendant[ ] had obtained some of the information sought ..., the short answer is that.... [t]he defendant['s] attempted invasion of privacy ... failed." *Cort,* 431 N.E.2d at 910. The Supreme Judicial Court has twice declined to decide whether the Privacy Act "reaches attempted interference with a person's privacy." *See Folmsbee v. Tech Tool Grinding & Supply, Inc.,* 417 Mass. 388, 630 N.E.2d 586, 589 n. 4 (1994); *Bally v. Northeastern Univ.,* 403 Mass. 713, 532 N.E.2d 49, 53 n. 5 (1989). The court has suggested that the statute may *not* reach attempts. *See Bally,* 532 N.E.2d at 53 n. 5, *comparing* Mass.Gen.L. ch. 214, § 1B (prohibiting interference with a right to privacy) *with* Mass.Gen.L. ch. 12, § 11H (prohibiting interference *and* attempted interference with civil rights). Thus, *Cort's* rejection of the "failed" invasion as a basis for liability apparently continues to express the law of Massachusetts on this question.

### (c) Suspension and Demotion

■ *The employment actions UPS took against French—putting him on involuntary leave and then demoting him—were not themselves an invasion of his privacy within the scope of the statutory cause of action. If these actions were wrongful, it would have to have been for some other reason.*

*Therefore, French's claim for invasion of privacy must be dismissed.*

### Count 2: Reckless Infliction of Emotional Distress

*French's second count is for reckless infliction of emotional distress. He asserts that "UPS' conduct toward [him] was extreme and outrageous and would not be tolerated in a civilized society"; that "UPS should have known that its conduct was likely to cause the Plaintiff serious harm"; and that "UPS' conduct has in fact caused the Plaintiff serious emotional harm." Compl. ¶¶ 20–22.*

■ *In a claim for infliction of emotional distress where no physical injury is involved, French must establish that the actor* intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; "that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized* community' "; and "that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.' " *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 318–19 (1976) (quoting *Restatement (Second) of Torts,* § 46, cmts. d, j (1965)); *Foley v. Polaroid Corp.,* 400 Mass. 82, 508 N.E.2d 72, 82 (1987). It is not enough to allege that the defendants behaved

with an intent which is tortious or even criminal, or that [they have] intended to inflict emotional distress, or even that [their] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. [Rather,] [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Foley,* 508 N.E.2d at 82 (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)). Beyond alleging intentional invasion of privacy, the complaint does not set forth any facts that would satisfy the requirement of this tort. As discussed above, there was no invasion of privacy.

■ Furthermore, as UPS notes, this claim is barred by the exclusivity provision of the Massachusetts Workers' Compensation Act. Mass.Gen.L. ch. 152, § 24; *see Chatman v. Gentle Dental Center of Waltham,* 973 F.Supp. 228, 240 (D.Mass.1997). The claim does not fall within the exception recognized for claims against co-employees or supervisors who commit "intentional torts not related to the interests of the employer." *O'Connell v. Chasdi,* 400 Mass. 686, 511 N.E.2d 349, 351 (1987). The actions of UPS that French alleges were wrongful were clearly done within the scope of the employment relationship. Mass.Gen.L. ch. 152 § 1. In *Anzalone v. Massachusetts Bay Transp.*

*Auth.,* 403 Mass. 119, 526 N.E.2d 246, 249 (1988), the Supreme Judicial Court, distinguishing the *O'Connell* case, held that an employee's allegations that upon his return to work from an absence after a work-related injury, his supervisor criticized him, ordered him to perform "dirty and menial jobs, and, . . . . in order to exacerbate [his] physical condition, sent people smoking cigarettes into the office in which [he] was working . . . and placed [him] in a room with no ventilation and temperatures in excess of 100 degrees," referred to conduct that fell within the scope of employment, and was thus barred by the exclusivity provision of the Workers' Compensation Act. *Anzalone,* 526 N.E.2d at 248. French's allegations are similar, and they are likewise barred.

### Count 3: Massachusetts Civil Rights Act

French alleges that "UPS has, through threats, intimidation and coercion, interfered with the Plaintiff's right to privacy as guaranteed by the United States Constitution and state law," and alleges a violation of the Massachusetts Civil Rights Act ("MCRA"), Mass.Gen.L. ch. 12, § 11I. To establish this claim, the plaintiff "must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Bally,* 532 N.E.2d at 51–52 (internal quotations omitted). *Accord, Freeman v. Planning Bd. of W. Boylston,* 419 Mass. 548, 646 N.E.2d 139, 148 (1995).

However, French has alleged no conduct by UPS which could constitute "threats, intimidation or coercion" necessary to state a claim under MCRA. *See Webster v. Motorola, Inc.,* 418 Mass. 425, 637 N.E.2d 203, 206 (1994). In *Webster,* the plaintiffs alleged that their employer's conditioning their continued employment on participation in a drug testing program interfered with their right to privacy and constituted a MCRA violation. The court dismissed the MCRA claim for the reason that the potential loss of at-will employment did not constitute "threats, intimidation or coercion" within the meaning of the

statute. *See also Marsman v. Western Elec. Co.,* 719 F.Supp. 1128, 1138 (D.Mass.1988) ("threats, intimidation or coercion" element of MCRA claim will not routinely be inferred from typical employment dispute). As in *Webster,* the "coercion" French complains of was the "threat" of adverse employment action. Following *Webster,* that is insufficient.

Moreover, French cannot, as he attempts to do, predicate an MCRA claim against an employer on a theory of *respondeat superior. Lyons v. National Car Rental Sys.,* 30 F.3d 240, 247 (1st Cir.1994) ("claims against employers under the MCRA cannot rest on the doctrine of *respondeat superior* ").

French's claims for violation of the Massachusetts Civil Rights Act must be dismissed.

### Count 4: Wrongful Constructive Discharge

In Massachusetts, employment is presumptively at-will, meaning that either the employee or employer may end the employment without notice "for almost any reason or for no reason at all." *Jackson v. Action for Boston Community Dev.,* 403 Mass. 8, 525 N.E.2d 411, 412 (1988). French invokes the public policy exception to this general rule, which makes employers liable for terminating employees for reasons that would violate well-defined and clearly established public policies. *King v. Driscoll,* 418 Mass. 576, 638 N.E.2d 488, 492 (1994). Massachusetts courts have construed this exception narrowly, acknowledging that to do otherwise would convert the general rule of at-will employment into a rule that requires just cause to discharge an employee. *Id.* The application of the public policy exception has been limited to cases where an employee has been terminated for asserting a legally guaranteed right (such as filing a workers' compensation claim), doing what the law requires (such as serving on a jury), refusing to do what the law forbids (such as committing perjury), or cooperating with a law enforcement investigation of the employer. *Wright v. Shriners Hosp.,* 412 Mass. 469, 589 N.E.2d 1241, 1244 (1992). French was not engaged in any of these activities. The "public policy exception" to the at-will employment rule

does not encompass matters of internal company policy. *See King,* 638 N.E.2d at 492.

It is important to note that French was not suspended or demoted for refusing to provide information protected by his right to privacy. In *Cort,* 431 N.E.2d at 914, the Supreme Judicial Court reserved judgment about whether that circumstance would support a wrongful termination claim. Here, the employment action was based not on French's principled refusal to cooperate but rather on his part in the underlying incident itself.

French has not alleged facts sufficient to state a claim of wrongful termination.

### Conclusion

For the foregoing reasons, the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED, and judgment shall enter dismissing the complaint.

It is SO ORDERED.