# United States Court of Appeals
## For the First Circuit

---

No. 01-2579

BRIAN J. DASEY,

Plaintiff, Appellant,

v.

GLENN B. ANDERSON, JOSEPH McLAUGHLIN, JOHN DiFAVA,
PAUL L. REGAN, JOHN DOE,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Torruella and Lipez, Circuit Judges,
and McAuliffe,[*] District Judge.

---

Alan S. Fanger for appellant.
Matthew Q. Verge, Assistant Attorney General, with whom James
A. Sweeney, Assistant Attorney General, was on brief.

---

September 20, 2002

---

[*]Of the District of New Hampshire, sitting by designation.

**McAuliffe**, **District Judge**.  Brian Dasey ("Dasey") was employed as a state trooper by the Massachusetts Department of State Police ("MSP" or "State Police").  Before his probationary period expired, he was discharged for making a material misstatement in his employment application.  Dasey filed suit, asserting violations of the Massachusetts right-of-privacy law, Mass. Gen. Laws ch. 214, § 1B; the Federal Civil Rights Act, 42 U.S.C. § 1983; and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11H.  The district court granted summary judgment in favor of the defendants on all counts, and Dasey filed a timely appeal.  We affirm.

I.

The critical facts are not contested.  After completing his training at the State Police Academy, Dasey was enlisted as a uniformed member of the State Police on August 27, 1999.  During the initial application process to become a state trooper, Dasey affirmatively represented that he did not use illegal drugs and, during the preceding five-year period, had not "used, possessed, supplied or manufactured any illegal drugs."  On September 14, 1999, while Dasey was still serving in a probationary status,[1] MSP Deputy Superintendent Glenn Anderson was given a videotape that had been seized by state troopers while executing a search warrant in

---

[1] Rule 7.1.3 of the Commonwealth of Massachusetts State Police Rules and Regulations ("MSP Rules") provides: "During the first twelve months following a member's initial enlistment, members shall be retained on a probationary status.  During the probationary period, the Colonel/Superintendent may, as allowed by law, discharge any member."

-2-

an unrelated homicide investigation. The videotape showed Dasey and others apparently smoking marijuana.

After reviewing the videotape, Anderson and appellees John DiFava, Joseph McLaughlin, and Paul L. Regan, all senior State Police officers, concluded that Dasey had been caught on videotape using an illegal drug and, therefore, had necessarily made a false material statement when he denied prior drug use during the application process. Anderson summoned Dasey to MSP headquarters, where he was met by an attorney provided by the troopers' union, the State Police Association of Massachusetts ("SPAM"). Dasey and the union attorney then met with Anderson.

Anderson told Dasey that he had evidence (or information)[2] that Dasey had used an illegal drug and had falsely denied doing so during the employment application process. Dasey was offered an opportunity to resign in lieu of discharge.[3] He refused and was thereupon dismissed. Dasey was awarded a general discharge, executed by DiFava in his capacity as Colonel and Superintendent, which read, in its entirety, as follows: "In

---

[2] Anderson does not recall whether he disclosed the videotape's existence to Dasey and his union attorney at the initial meeting, but he did play the videotape for the union attorney after Dasey was formally discharged.

[3] Four different types of discharge are available to members of the State Police: (1) an "honorable discharge," which may be given upon retirement; (2) an "ordinary discharge," which may be given to a trooper who resigns at his or her own request, under honorable conditions; (3) a "general discharge," which shall be given to a trooper who does not qualify for either an honorable or an ordinary discharge; and (4) a "dishonorable discharge," which may be given to a trooper who is dismissed pursuant to an administrative hearing, or after having waived the right to such a hearing.

accordance with the Rules and Regulations governing the Department of State Police, the below named officer is hereby given a GENERAL DISCHARGE effective as of the close of business on Tuesday, September 14, 1999."

## II.

Dasey's amended complaint contained six counts. Counts I, II, and III asserted claims for invasion of privacy, brought under Mass. Gen. Laws ch. 214, § 1B, against various defendants. Count IV described a claim under 42 U.S.C. § 1983, based upon alleged violations of Dasey's federal constitutional rights to privacy and due process, as well as deprivation of a property right in continued employment allegedly established by Mass. Gen. Laws ch. 268, § 13B. The due process claim in Count IV alleged deprivation of both a property interest in continued employment and a reputation-based liberty interest. Dasey contended that his property interest in continued employment entitled him to a pre-termination hearing, while his liberty interest entitled him to a post-termination name-clearing hearing. Count V asserted a second § 1983 claim, involving a due process violation related to deprivation of a property interest, and Count VI asserted a violation of the Massachusetts Civil Rights Act. Because Dasey's amended complaint dropped the MSP as a defendant, and names the remaining defendants only in their individual capacities, neither the Eleventh Amendment nor principles of sovereign immunity present any obstacles to Dasey's claims.

The district court granted defendants' motion for summary judgment as to Counts I, II, III, and the invasion of privacy claim in Count IV. The court ruled that Dasey failed to allege that defendants disclosed any facts that would qualify as "private" for purposes of Mass. Gen. Laws ch. 214, § 1B, an essential element of the cause of action, and, alternatively, that Dasey failed to show that defendants acted unreasonably in reviewing the videotape, or in taking action against him based on its content. The district court also granted defendants' motion for summary judgment as to Counts V and VI, and the due process claim in Count IV, on grounds that Dasey, as a probationary trooper, had no reasonable expectation that his employment would continue and, as a consequence, had no constitutionally protected property interest in his job, or concomitant due process rights, at the time he was discharged. The district court did not directly address Dasey's claim that he was entitled to a name-clearing hearing to protect a reputation-based liberty interest.

### III.

We review the district court's ruling on summary judgment de novo. Pure Distribs., Inc. v. Baker, 285 F.3d 150, 154 (1st Cir. 2002) (citation omitted). We may affirm the entry of summary judgment "on any ground revealed by the record." Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When ruling upon a party's motion for summary judgment, the district court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

This appeal presents three basic issues; two are rather straightforward, and one is slightly more complicated. We begin with the less complicated matters -- Dasey's privacy and liberty-interest claims -- and end with his asserted right to a pre-termination hearing.

### A. Privacy Interest

Massachusetts recognizes an actionable right of privacy. The applicable statute provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. Laws ch. 214, § 1B. Section 1B protects people from "disclosure of facts . . . that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest." Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 467 N.E.2d 126, 133-34 (1984) (citations omitted); see also French v. United Parcel Serv., Inc., 2 F. Supp. 2d 128, 131 (D. Mass. 1998) ("To constitute an invasion of privacy, the invasion must be both unreasonable and serious or substantial.") (citation omitted). Massachusetts does not recognize a cause of action for false light invasion of privacy. Canney v. City of Chelsea, 925 F. Supp. 58, 70 (D. Mass. 1996) (citing ELM Med. Lab.,

Inc. v. RKO Gen., Inc., 403 Mass. 779, 532 N.E.2d 675, 681 (1989)). Rather, Mass. Gen. Laws ch. 214, § 1B is typically invoked to remedy "the gathering and dissemination of information which the plaintiffs contended was private." Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 567 N.E.2d 912, 914 n.4 (1991) (citations omitted).

As the district court correctly decided, Counts I, II, and III of the complaint fail, as a matter of law. Neither the complaint nor Dasey's objection to summary judgment identified any facts at all, and certainly no highly personal or intimate facts, about Dasey that were either gathered or disseminated by any defendant.

As for the personal or intimate nature of the allegedly private facts disclosed in the videotape, French plainly establishes that activity in the presence of others who owe no duty of confidentiality -- a category which includes the subject matter of the videotape -- is hardly "private." See French, 2 F. Supp. 2d at 131. Likewise, the "gathering and dissemination" element has not been met. Dasey neither alleged, nor produced any evidence that suggested, that any defendant made or distributed the tape; he only alleged that defendants watched it.[4]

---

[4] Dasey argues that summary judgment should not have been entered against him without first affording him an opportunity to engage in discovery. But he cannot show how discovery would have made any difference in establishing the private nature of the facts disclosed -- i.e., the activity captured on tape. The content of the tape is undisputed.

Even if Dasey had been able to satisfy the "gathering and dissemination" and "private facts" elements of his claim under Mass. Gen. Laws ch. 214, § 1B, that still would not have been enough to survive summary judgment. To be actionable, the gathering and dissemination of private facts must also be unreasonable. When determining the reasonableness of an intrusion, an "employer's legitimate interest in determining the employees' effectiveness in their jobs should be balanced against the seriousness of the intrusion on the employees' privacy." O'Connor v. Police Comm'r of Boston, 408 Mass. 324, 557 N.E.2d 1146, 1150 (1990) (quoting Bratt, 467 N.E.2d at 135) (holding that police department's "compelling interest in determining whether cadets were using drugs" outweighed cadets' privacy interest in avoiding unannounced urinalysis tests for which sample collection was monitored by police personnel). Here, defendants' modest intrusion into Dasey's privacy (if reviewing the seized videotape evidence constituted an intrusion at all) was entirely reasonable in light of their compelling interest in verifying the truthfulness of his prior assurances regarding illegal drug use.[5]

---

[5] As stated earlier, Dasey does not allege that any defendant actively pried into his personal life. Instead, his privacy claims appear to rest upon a contention that defendants somehow owed him a duty to look away when his image appeared on the seized videotape. Furthermore, because Dasey does not allege that the videotape was created in aid of a grand jury investigation, his argument that grand jury secrecy rules somehow were violated also fails; his reliance on In re Doe Grand Jury Investigation, 415 Mass. 727, 615 N.E.2d 567 (1993) is, therefore, misplaced. See also WBZ-TV4 v. Dist. Att'y for the Suffolk Dist., 408 Mass. 595, 562 N.E.2d 817, 821 (1990) ("the videotape has the characteristics of material especially prepared for the grand jury which, when received by them, should ordinarily be protected by the rule of

-8-

In sum, Dasey's privacy claims fail in three ways. Given the allegations in his complaint, the factual assertions in his objection to summary judgment, and his failure to identify pertinent information that might have been developed through discovery, this case involves: (1) no "private" facts of any sort; (2) no acts constituting "gathering or dissemination" by defendants; and (3) no unreasonable conduct on defendants' part. Accordingly, the district court's entry of judgment in favor of defendants on Dasey's state-law privacy claims (Counts I, II, and III) is affirmed.

In Count IV Dasey asserted a claim based upon his federal constitutional right to privacy. However, we are aware of no constitutional principle that would bar defendants from, as Dasey puts it, "using information concerning [his] private life as the basis for terminating [his] employment." Because that allegation is the sole basis upon which Dasey rests his federal constitutional privacy claim, the district court's entry of judgment as to that aspect of Count IV is affirmed as well.

## B. Liberty Interest

Dasey included a § 1983 claim in Count IV of the complaint, in which he asserted the deprivation of a reputation-based liberty interest, occasioned by defendants' refusal to grant him a post-termination name-clearing hearing. In their motion for summary judgment, defendants specifically addressed Dasey's

grand jury secrecy").

liberty-interest claim.  Dasey, however, did not respond, not even to the extent of arguing, as he does now on appeal, that summary judgment would be inappropriate due to the limitations placed on discovery.  Given his failure to press the issue in the district court, defendants say he has forfeited it.  We need not dwell on whether Dasey has or has not forfeited the issue, however, because we affirm the district court's entry of judgment based upon Dasey's failure to plead a cognizable § 1983 claim arising from the deprivation of a liberty interest.

A public employer's action may deprive an employee of a constitutionally protected liberty interest in his or her reputation under circumstances first identified in Paul v. Davis, 424 U.S. 693, 710-12 (1976).  This court

> interpreted [Paul's] requirements in Beitzell
> v. Jeffrey, 643 F.2d 870 (1st Cir. 1981),
> stating that "the Fourteenth Amendment
> procedurally protects reputation only where
> (1) government action threatens it, (2) with
> unusually serious harm, (3) as evidenced by
> the fact that employment (or some other right
> or status) is affected." Id. at 878 (footnote
> and citations omitted).  Moreover, the
> municipality terminating the employee must
> also be responsible for the dissemination of
> defamatory charges, in a formal setting (and
> not merely as the result of unauthorized
> "leaks"), and thereby significantly have
> interfered with the employee's ability to find
> future employment. Id. at 879.

Silva v. Worden, 130 F.3d 26, 32-33 (1st Cir. 1997) (holding that under both the federal constitution and more favorable Massachusetts state law, directed verdict for defendant employer was appropriate when plaintiff produced no evidence that defendant

disseminated information about the reasons for plaintiff's termination).

Here, Dasey has not alleged any communication by defendants of the charges against him, other than statements made directly to him at MSP headquarters on September 14, 1999. His general discharge does not recite the grounds for dismissal, and nothing he presented to the district court suggests any other disclosures by defendants. Absent dissemination -- the means by which an employee's reputation might be threatened with serious harm -- a terminated public employee has no constitutional right to a name-clearing hearing. Because Dasey did not allege, or present any evidence of, conduct by defendants that, if proven, would constitute a deprivation of any constitutionally protected liberty interest, the district court's entry of judgment in favor of defendants on that aspect of Count IV is affirmed.

### C. **Property Interest**

What remains, then, is Dasey's claim that he was denied due process when he was summarily discharged by Colonel DiFava, the MSP Superintendent. The issue before us is whether the district court erred in deciding that Dasey had no constitutionally protected property interest in his continued employment, and, therefore, was afforded all the process due him as a probationary employee when the Superintendent summarily discharged him after concluding he had made a material misstatement of fact related to prior drug use.

Dasey contends that, notwithstanding his probationary status, he was entitled to a pre-termination hearing because: (1) the statute granting the right to a pre-termination hearing to troopers who have completed the one-year probationary period, Mass. Gen. Laws ch. 22C, § 13, does not expressly preclude extension of that right to probationary troopers; (2) Mass. Gen. Laws ch. 150E requires the MSP, as a public employer, to bargain with SPAM over working conditions, including employee discipline; and (3) the collective bargaining agreement ("CBA") negotiated by the MSP and SPAM includes a bargained-for extension of the right to a pre-termination hearing to all troopers, probationary and veteran alike, a provision that overrides the MSP rule subjecting first-year troopers to summary discharge.  He further argues that even if he was not entitled to a pre-termination hearing under the CBA, he still had a reasonable expectation of continued employment (and thus a protected property interest and the right to a pre-termination hearing) based upon the customs and practices of the MSP.  Finally he says that the district court's resolution of that disputed fact-bound issue (i.e., whether a custom or practice of granting hearings to probationary troopers existed) was inappropriate on summary judgment.

To prevail on his § 1983 claim Dasey must establish that defendants deprived him of a constitutional right, in this case, his property interest in continued employment, without due process.

> It is well established that a public employee has a constitutionally protected property interest in his continued employment when he reasonably expects that his employment

-12-

> will continue. <u>Cummings</u> v. <u>South Portland</u> <u>Hous. Auth.</u>, 985 F.2d 1, 2 (1st Cir. 1993). An employee who can only be dismissed for cause has such an expectation. <u>Id.</u> An at-will employee, however, has no reasonable expectation of continued employment. <u>Id.</u> Whether an employment contract allows dismissal only for cause is a matter of state law. <u>Id.</u>

<u>King</u> v. <u>Town of Hanover</u>, 116 F.3d 965, 969 (1st Cir. 1997). Furthermore, "an employer's unilateral declarations, promises, or conduct regarding conditions of continued employment might in some circumstances create a 'legitimate claim of entitlement to job tenure.'" <u>Correa-Martinez</u> v. <u>Arrillaga-Belendez</u>, 903 F.2d 49, 55 (1st Cir. 1990) (quoting <u>Perry</u> v. <u>Sindermann</u>, 408 U.S. 593, 602 (1972)) (holding that written assurances in letter of engagement were insufficient to contravene a "comprehensive network of statutory and regulatory directives governing the terms of . . . employment").

The terms of Dasey's employment are not set out in any single document, but are found in three places: (1) Mass. Gen. Laws ch. 22C; (2) MSP Rules; and (3) the CBA. Mass. Gen. Laws ch. 22C, § 13 provides, in pertinent part:

> Any uniformed member of the state police who has served for one year or more and against whom charges have been preferred shall be tried by a board to be appointed by the colonel or, at the request of the officer, may be tried by a board consisting of the colonel.

The MSP Rules, promulgated by the Colonel/Superintendent, under the authority of Mass. Gen. Laws ch. 22C, § 10, contain two provisions relating to a trooper's right to a pre-termination hearing. Rule 6.5.1 mirrors Mass. Gen. Laws ch. 22C, § 13, in providing that "[a]

-13-

member who has served for one year or more and has been formally charged in accordance with Department Rules and Regulations shall be tried by a State Police Trial Board appointed by the Colonel/Superintendent."  In contrast, Rule 7.1.3, quoted above, explicitly provides that a uniformed member of the State Police who has served for <u>less</u> than one year is on probationary status, and may be discharged by the Superintendent without any pre-termination hearing.

As noted, the third source describing terms of Dasey's employment is the CBA, which provides, in part, as follows:

> Except as otherwise limited by an express provision of this Agreement, <u>the Employer shall have the right to exercise complete control and discretion over</u> its organization and technology, including but not limited to, the determination of the standards of services to be provided and standards of productivity and performance of its employees; the establishment and/or revision of personnel evaluation programs; the determination of the methods, means and personnel by which its operations are to be conducted; the determination of the content of job classifications; the appointment, promotion, assignment, direction and transfer of personnel; <u>the suspension[,] demotion, discharge, or any other appropriate action against its employees **with just cause**</u>; the relief from duty of its employees because of lack of work or for other legitimate reasons; the establishment of reasonable work rules; and the taking of all necessary actions to carry out its mission in emergencies.

(emphasis supplied).  The quoted language is found in a section of the CBA entitled "Article 2 -- Managerial Rights/Productivity."

As between the CBA and MSP Rules, the parties agree that in case of conflict, the CBA controls.  Indeed, Article 3 of the

-14-

CBA confirms that "[i]f this Agreement contains a conflict between matters covered by this Agreement and the Rules and Regulations of the Massachusetts Department of State Police the terms of this Agreement shall prevail." Similarly, the MSP Rules are prefaced by a notice stating that "[t]he Massachusetts State Police Rules and Regulations do NOT supersede any contractual agreements between the Commonwealth and the members of the State Police, law, or Executive Order as promulgated by the Governor of the Commonwealth of Massachusetts."

At the time of his discharge, Dasey was not "[a]n employee who [could] only [have been] dismissed for cause." King, 116 F.3d at 969. Plainly, neither Mass. Gen. Laws ch. 22C, § 13 nor the MSP Rules grant probationary employees like Dasey any right to be discharged only "for cause." If Dasey had such a right, it could have arisen only from the cryptic phrase, "with just cause," found in Article 2 of the CBA.

The CBA is a contract, subject to construction under Massachusetts law, which provides as follows:

> If a contract . . . is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment. Where, however, the contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial.

Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 761 N.E.2d 946, 951 (2002) (citations omitted). Contractual language is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper

-15-

one." <u>Citation Ins. Co.</u> v. <u>Gomez</u>, 426 Mass. 379, 688 N.E.2d 951, 953 (1998) (citations omitted). Mere disagreement between the parties as to the meaning of a disputed contractual provision is, of course, not enough to support a claim of ambiguity. <u>See</u> <u>id.</u> (quoting <u>Lumbermens Mut. Cas. Co.</u> v. <u>Offices Unlimited, Inc.</u>, 419 Mass. 462, 645 N.E.2d 1165, 1168 (1995)).

Article 2 of the CBA does not purport to grant probationary employees the right to be discharged "only for just cause," and, despite Dasey's energetic effort to tease such a right out of Article 2, that provision cannot be fairly characterized as ambiguous. Article 2 must be construed in the context of the agreement as a whole, as well as in the context of the broader comprehensive regulatory and statutory scheme of which it is a part. <u>See</u> <u>USM Corp.</u> v. <u>Arthur D. Little Sys., Inc.</u>, 28 Mass. App. Ct. 108, 546 N.E.2d 888, 893 (1989) ("The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.") (citations omitted).

As noted above, Mass. Gen. Laws ch. 22C, § 13 expressly limits the right to a pre-termination hearing to troopers with one year or more of service, and Rule 7.1.3 expressly provides that first-year probationary troopers are subject to discharge at the discretion of the Superintendent. Given the detailed and comprehensive statutory and regulatory provisions regarding the availability of pre-termination hearings, as well as the specific provisions related to terminating probationary employees, it simply

would not be reasonable to construe the passing reference to "just cause" found in the general CBA provision describing management rights as granting a probationary employee affirmative employment protection that is both denied by exclusion in an applicable statute and denied explicitly by rule.[6]

Article 2 does, obviously, include the phrase "with just cause." But rather than granting rights to probationary employees that are excluded by statute and denied by administrative rules, that phrase is properly understood as reflecting the language of and protections extended in Mass. Gen. Laws 22C, § 13. In addition to granting veteran troopers the right to a pre-termination hearing, that statute establishes the standard of review against which discharge decisions are to be measured. A court to which a trial board decision has been appealed shall "review such finding and determine whether or not upon all the evidence such finding and punishment was justified." Id. (emphasis added).

Necessarily, then, a trial board's pre-termination disciplinary decision must be "justified." But only veteran troopers are entitled to a pre-termination hearing before a trial board. Thus, Article 2 of the CBA, properly construed, describes MSP's "right to exercise complete control and discretion over . . . the suspension[,] demotion, discharge, or any other appropriate

---

[6] On this point, we observe that neither party has provided us with a full copy of the CBA, and, while we have Article 2 ("Managerial Rights/Productivity"), we do not have before us any provisions under a title like "Employee Rights," where one would normally expect to find a provision extending pre-termination hearing rights to first-year troopers, if that was the intent of the parties who negotiated the CBA.

action against its employees," but also recognizes that in situations such as those covered by Mass. Gen. Laws ch. 22C, § 13, in which pre-termination hearings and "justification" (or "just cause") are required, the State Police will afford those rights before taking disciplinary action.  While the CBA might have been drafted with greater clarity, nevertheless, understood in context and in light of the statutory and regulatory scheme governing State Police disciplinary rights and procedures, the phrase "with just cause" in Article 2 is susceptible to only one reasonable construction.  The phrase pertains to the discipline or discharge of veteran troopers, not probationary employees.

Because Article 2 of the CBA is unambiguous, we need not look behind it to determine the intent of the parties (MSP and SPAM).  See Seaco, 761 N.E.2d at 951.  However, even if the disputed language were ambiguous, defendants would still be entitled to summary judgment.  Dasey asserts that the phrase "with just cause" was the product of arm's-length labor negotiations between the MSP and SPAM over disciplinary procedures applicable to all troopers.  Appellees, however, produced uncontroverted deposition testimony from a member of the MSP bargaining team that negotiated the current CBA, who testified that discipline was never a subject of negotiations between the MSP and SPAM.  Dasey presented nothing to the district judge capable of putting that fact in dispute, or from which it could be inferred that the parties intended the phrase to provide just-cause protections, and the right to a pre-termination hearing, to probationary troopers as

-18-

well as veterans.  Accordingly, based upon the undisputed factual record, it is apparent that use of the phrase "with just cause" in Article 2 of the CBA was not intended by either the union or MSP to establish a just-cause prerequisite for termination or the right to a pre-termination hearing for probationary troopers.

Dasey fares no better with his customs and practices argument.  In <u>Perry</u> v. <u>Sindermann</u>, 408 U.S. 593, 601-03 (1972), the Supreme Court established the principle that a constitutionally protected property interest in continued employment can be founded on an employer's institutional customs and practices.  <u>Perry</u> involved a college professor who claimed a property interest in renewal of his teaching contract.  <u>Id.</u> at 599-600.  He avoided a motion to dismiss in large part based upon the college's official Faculty Guide, which provided:

> <u>Teacher Tenure</u>: Odessa College has no tenure system.  The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work.

<u>Id.</u> at 600.  Likewise, in <u>Colburn</u> v. <u>Trustees of Indiana University</u>, 739 F. Supp. 1268 (S.D. Ind. 1990), the claims of two college professors who were not reappointed during their probationary periods survived summary judgment, albeit barely:

> In today's case . . . there is some evidence in the record supporting the claim to a custom of <u>de facto</u> reappointments during the probationary period.  When taking the plaintiffs' evidence favorably for them on this motion for summary judgment, reasonable inferences can be drawn that the custom

-19-

existed and was indeed practiced. Plaintiffs testified that they were "assured" of reappointment if their performance remained satisfactory, and the testimony that such reappointments were "fairly automatic" can support a finding that such a custom was practiced. Plaintiffs' evidence on this issue at this stage is weak, but it appears to be just enough to get them past summary judgment.

Id. at 1293 (citation omitted). And, in Cheveras Pacheco v. Rivera Gonzalez, 809 F.2d 125, 127 (1st Cir. 1987), we held that an employee who did "not describe any promises or representations made that might give rise to a property interest in employment" had no cognizable property interest in that employment.

Unlike in Perry and Colburn, the evidence of custom and practice Dasey produced in the district court fell well short of establishing a reasonable expectation of continued employment on his part. He produced no evidence -- not even his own affidavit -- of any oral assurances, made to him or others, to the effect that first-year troopers were anything other than probationary employees who could be terminated at the discretion of the Colonel/Superintendent. He produced no evidence suggesting any tradition or practice of affording probationary troopers pre-termination hearings. Similarly, he produced no evidence that any first-year trooper had ever been afforded a pre-termination hearing.

At most, Dasey produced a patchwork of indirect evidence from which a first-year trooper might extrapolate "a mere subjective expectancy that his job would continue indefinitely." Id. at 127 (citing Perry, 408 U.S. at 603) (internal quotation

-20-

marks omitted).  Even if Dasey could prove, as he asserts, that trainees (or cadets) at the police academy were afforded pre-termination hearings, or that in the past some first-year troopers have been presented with formal written charges before being disciplined, that would not establish that first-year troopers could reasonably believe their status to be anything other than that of probationary employees, subject to discharge at the discretion of the Colonel/Superintendent.  Unlike probationary troopers, trainees (or cadets) are not enlisted members of the State Police, and the terms of their employment relationship with the Commonwealth are not necessarily the same as probationary troopers.

Because neither the collective bargaining agreement nor the MSP's customs and practices provided Dasey with a reasonable expectation of continued employment, he had no constitutionally protected property interest in his job.  Absent such an interest, he had no right to a pre-termination hearing.

### Conclusion

For the foregoing reasons, we **affirm** the district court's entry of summary judgment in favor of the defendants.